# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| CAROLYN ANN JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:22-cv-02683-JPM-tmp |
| v. ) | |
| ) | |
| BWAY CORPORATION d.b.a. ) | |
| MAUSER PACKAGING SOLUTIONS ) | |
| & RANDY DUERKSEN ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Before the Court are Defendants BWAY Corporation d.b.a. Mauser Packaging Solutions' ("BWAY's") and Randy Duerksen's ("Duerksen's") (collectively, "Defendant's") Motions for Summary Judgment, both filed August 3, 2023. (ECF Nos. 47-48.) Duerksen moves for Summary Judgment on Plaintiff Carolyn Ann Jones' ("Jones'" or "Plaintiff's") battery claim. (ECF No. 47.) BWAY moves for Summary Judgment on Plaintiff's worker's compensation retaliation claim, Tennessee Human Rights Act ("THRA") harassment and retaliation claims, vicarious liability claim, and certain damages. (ECF No. 48.)

I. **BACKGROUND**

The Complaint in this case was filed on August 23, 2022 in the Chancery Court of Shelby County, Tennessee. (ECF No. 1-2.) The case was removed to federal court on October 5, 2022. (ECF No. 1.) Plaintiff alleges that Duerksen approached her while she was working and rubbed his penis/groin against her buttocks for three to four seconds. Plaintiff further alleges that, despite

both parties being clothed, she could feel that Duerksen's penis was erect throughout the contact.[1] She alleges that Duerksen is therefore liable for battery, and BWAY is liable for harassment and retaliation under the Tennessee Human Rights Act, is vicariously liable for Duerksen's battery, and is separately liable for retaliation related to her workers' compensation claim. (ECF No. 1-2.) Defendants filed the instant Motions on August 3, 2023, along with statements of material facts. (ECF Nos. 47-48.) Duerksen filed seven exhibits with his Motion, and BWAY filed eight.[2] (ECF Nos. 47-48.) Plaintiff filed her responses in opposition on September 14, 2023, along with Responses to Defendants' Statements of Material Facts and seven exhibits.[3] (ECF Nos. 54-56.) Defendants filed responses in support of their Motions on October 3, 2023, along with Responses to Plaintiff's Statement of Additional Material Facts. (ECF Nos. 60-63.)

I. **UNDISPUTED FACTS**

Defendant BWAY hired Plaintiff as a Quality Assurance Technician on August 3, 2016. (ECF No. 54-1 ¶ 4.) During her BWAY employment, Ms. Jones received and knew that BWAY had policies prohibiting certain acts in the workplace. (ECF NO. 54-1 ¶ 3.) As part of the hiring process, Plaintiff was required to disclose her employment for the past ten years, and she named "Randstad, ELX Distribution, and Dollar General Distribution." (ECF No. 54-1 ¶¶ 5-6.) BWAY initially hired Defendant Randy Duerksen in 2003. (ECF No. 55-1 ¶ 1.)

On December 20, 2018, Plaintiff filed a claim for workers' compensation benefits pertaining to a workplace head injury. (ECF No. 54-1 ¶ 11.)

---

[1] Defendants counters that the claim that Duerksen's rubbed his *erection* against Plaintiff's buttocks is substantively different—and impermissibly inconsistent—with Plaintiff's earlier representations that Duerksen rubbed his penis/groin against her buttocks. Here, the lesser contact includes the greater, and a reasonable jury could find a variety of reasons that Plaintiff may have been uncomfortable specifying during her deposition precise details of an alleged sexual assault.
[2] Many of the exhibits were filed by both Duerksen and BWAY.
[3] Many of the exhibits were duplicative of those filed by Duerksen and BWAY.

Defendant Randy Duerksen reported by email that at 6:40 a.m. on August 24, 2021, he and Plaintiff were working on the factory floor and he went to investigate an issue with a machine where Plaintiff was working. (ECF No. 54-1 ¶ 18.) At 8:37 a.m., Deurksen reported by email to Roxanne Mayes, a BWAY Human Resources Manager, that Plaintiff had threatened him. (ECF No. 54-1 ¶ 24.) At 3:17 p.m., on August 24, 2021, following a discussion with Human Resources, Ms. Jones sent an email to BWAY alleging that Deurksen had inappropriately touched her that morning. (ECF No. 54-1 ¶ 30.) Plaintiff later stated in her deposition that Duerksen "bumped her with his groin area" for "three or four seconds" while passing her on the factory floor. (ECF No. 55-1 ¶ 18.) Duerksen "did not touch [Plaintiff] with his hands and . . . she did not see him approach her." (ECF No. 55-1 ¶ 19.) Duerksen denied touching Plaintiff. (ECF No. 54-1 ¶ 34.)

## II.   LEGAL STANDARD

### a. *Summary Judgment*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Canderm Pharmacal, Ltd. V. Elder Pharm., Inc. 862 F.2d 597, 601 (6th Cir. 1988). A dispute about a material fact is genuine only if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment carries the burden of demonstrating that there is no evidence to support the non-movant's case. Celotex, 477 U.S. at 325. In reviewing a motion for summary judgment, the court must view the evidence "in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Smith v. Perkins Bd. of Educ., 708 F.3d 821, 825 (6th Cir. 2013); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

III. **ANALYSIS**

a. *Battery Claim*

Duerksen argues that Plaintiff "has not established that Duerksen's alleged bumping . . . constitutes battery under Tennessee law given that the alleged bumping, which Duerksen denies, was unintentional and not so offensive as to amount to a battery." (ECF No. 47 at PageID 239.) Duerksen argues that it is significant that "Plaintiff admits that [he] did not touch her with his hands; nor did she see him approach" and that Plaintiff cannot prove intent, analogizing to two cases where the alleged battery had no sexual component. (ECF No. 47 at PageID 243 (citing Runions v. Tennessee State University, NO. M2008-01574-COA-R3-CV, 2009 WL 1939816 (Tenn. Ct. App. July 6, 2009); Haddock v. Wal-Mart Stores East, LP, No. 3:13-0027, 2014 WL 2434194, at *3-4 (M.D. Tenn. May 29, 2014)).)

"In Tennessee, battery is defined as any intentional, unlawful and harmful (or offensive) contact by one person with the person of another." Reagan v. City of Knoxville, 692 F.Supp.2d 891, 904 (E.D. Tenn. 2010) (internal citations omitted). While inadvertent or accidental touching is insufficient to constitute battery, there is a genuine dispute of material facts as to whether touching occurred here and, if it did occur, what the nature of the touch was. The case law that Duerksen points to does not involve allegations of sexual contact. Further, the divide between Duerksen's characterization of the alleged touching (an accidental bump in passing) and Plaintiff's (Duerksen pressing his erect penis into her buttocks for three or four seconds) is wide. (See ECF No. 62 at PageID 1031.) Resolving the question of the contact's nature and existence ultimately rests on assessment of the credibility of Plaintiff and Duerksen, a task that can only be taken up by the jury. As such, Defendant Randy Duerksen's Motion for Summary Judgment is **DENIED**.

      b. *Workers Compensation Retaliation Claim*

"Tennessee recognizes a cause of action for retaliatory discharge following an employee's claim for worker's compensation . . . In order to make out a *prima facie* case for retaliatory discharge, a plaintiff employee must prove that (1) she was an employee of the defendant at the time of the injury, (2) she made a claim against the defendant for workers' compensation benefits, (3) the defendant terminated her employment, and (4) the claim for workers' compensation was a substantial factor in the employer's motivation to terminate her employment." Cooper v. Wyndham Vacation Resorts, Inc., 570 F.Supp. 2d 981, 985-87 (M.D. Tenn. 2008) (internal citations omitted). Plaintiff's workers' compensation claim was filed in 2018. (ECF No. 54-1 ¶ 11.) While Plaintiff argues that "proof of temporal proximity between the protected activity and the adverse employment action, 'coupled with other indicia of retaliatory conduct,' may give rise to a finding of a causal connection[,]" she fails to show temporal proximity between her workers' compensation claim and any indicia of retaliatory conduct. (ECF No. 54 at PageID 418 (citing Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 737 (6th Cir. 2006)).) A period of more than two and a half years passed between Plaintiff's workers' compensation claim and her termination. (ECF No. 54 at PageID 418.); see Perry v. Young Touchstone Co., 846 F.Supp. 2d 922. 931 (W.D. Tenn. 2012) (no causal connection when a one year gap existed between workers' compensation claim and layoff). Plaintiff's cursory allegations of "harassment" in the intervening period, and one undated two-week transfer from day shift to night shift, are insufficient to demonstrate a causal connection between her workers' compensation claim, the alleged sexual harassment incident, and her termination. As such, Defendant BWAYs Motion for Summary Judgment on the workers' compensation retaliation claim is **GRANTED**.

  c. *THRA Harassment Claim*

  Harassment claims under the Tennessee Human Rights Act ("THRA") are analyzed under the same standard as Title VII harassment claims. Blackburn v. Shelby County, 770 F.Supp. 2d 896, 934 (W.D. Tenn.. 2011). Plantiffs show a *prima facie* harassment claim when they show 1) that they were a member of a protected class; 2) that they were subjected to unwelcome sexual harassment; 3) that the harassment was based on sex; and 4) that the harassment unreasonably interfered with their employment by creating a hostile, offensive, or intimidating environment. Id. at 931-32. "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). The conduct must be both objectively and subjectively hostile or abusive. Id. at 21-22.

  The bar for sexual harassment constituting a hostile work environment is relatively high in the Sixth Circuit. See Clark v. United Parcel Service, Inc., 400 F.3d 341 (6th Cir. 2005) (harassment fell "short of being sufficiently pervasive, hostile, or abusive to support a legal claim of a hostile work environment" where three incidents occurred over two and a half years, including an employer twice placing a vibrating pager on employees thigh and pulled at overalls after the employee told her she was wearing a thong); Clark v. United Parcel Service, Inc., 400 F.3d 341 (6th Cir. 2005) (same where male supervisor made sexually suggestive comments about female plaintiff's appearance, touched her breast as he removed and replaced a pen from her shirt pocket, leered at her, and made sexually aggressive comments); but see EEOC v. Harbert-Yeargin, Inc., 266 F.3d 498, 508-09 (6th Cir. 2001) (prima facie showing of hostile workplace where male

6

supervisor grabbed male employee's genitals twice, stalked employee, and where co-workers harassed employee for making a complaint.)

The Sixth Circuit has, however, "made clear that harassment involving an 'element of physical invasion' is more severe than harassing comments alone" and that harassing sexual comments and one act of touching "contained an element of physical invasion that, 'at minimum, . . . raise[d] a question of fact for the jury[.]" Hawkins v. Anheuser-Busch, 517 F.3d 321, 333-34 (6th Cir. 2008) (citing Williams v. General Motors Corp, 187 F.3d 553, 556 (6th Cir. 1999)). As such, the alleged physical invasion in this case raises a question of fact for the jury as to whether Duerksen's conduct and the subsequent investigation created a hostile work environment. To the extent that BWAY argues immunity because it "promptly initiated an investigation as a good-faith remedial action," BWAY fails to carry its burden on summary judgment by citing only to genuinely disputed material facts. BWAY's Motion for Summary Judgment on THRA harassment claims is **DENIED**.

      d. *THRA Retaliation Claim*

THRA retaliation claims are also assessed under the Title VII framework. Blackburn, 770 F.Supp. 2d at 934. A *prima facie* case of retaliation under Title VII of the Civil Rights act requires plaintiffs to show that 1) they engaged in protected activity; 2) the defendants knew of this protected activity; 3) the defendants subsequently took an adverse action; and 4) a causal connection exists between the protected activity and adverse action. Goller v. Ohio Dep't of Rehab & Corr., 285 F. App'x 250, 256 (6th Cir. 2008) (citing E.E.O.C. v. Avery Dennison Corp., 104 F.3d 858, 860 (6th Cir. 1997)). A causal connection can be assumed if there is evidence that the adverse action and the plaintiff's exercise of his rights occurred within a short time. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

Defendant BWAY argues that "Plaintiff never reported any supposed harassment by Duerksen prior to BWAY suspending her, pending termination, for verbally assaulting and threatening Duerksen . . . [and] has not shown that BWAY's proffered reason for terminating her . . . is false." (ECF No. 48 at PageID 315.) At the summary judgment stage, however, the movant carries the burden of demonstrating that there is no evidence to support the non-movant's case. Celotex, 477 U.S. at 325. Here, there are disputed facts as to whether Plaintiff threatened Duerksen and when the decision to terminate Plaintiff was made (i.e. whether the decision to terminate was final prior to Plaintiff's report or after the report and investigation). Further, Defendant BWAY undermines their argument by stating that their nonpretextual reason for terminating Ms. Jones was that "Plaintiff either lied to BWAY when she affirmatively told human resources (twice) during an official investigation that [Duerksen] did not touch her in any way, or she lied several hours later when she claimed via email that Duerksen [touched her]. Either way, Plaintiff committed a terminable offense." (ECF No. 60 at PageID 1016.) If lying in the first instance is a terminable offense, BWAY suggests that any sexual assault survivor who failed to immediately disclose their assault in response to broad lines of questioning should be terminated. If lying in the second instance is the relevant terminable offense, it occurred subsequent to the adverse action. Either way, BWAY's argument in its Response is inconsistent with its argument in its Motion, and BWAY fails to meet its burden to show that summary judgment is warranted. Summary judgment is therefore **DENIED** on the THRA retaliation claim.

    e.  *Vicarious Liability*

Defendant BWAY argues that they cannot be held vicariously liable because Duerksen's alleged battery would fall outside the scope of his employment. (ECF No. 48 at PageID 317.) BWAY argues that "[t]his Court's Order denying Defendants' Motion to Dismiss [] is in fact

8

premised on the concept that Duerksen's actions are not within the scope of employment and therefore cannot fall under the exclusivity provision of Tennessee Workers' Compensation Law." (Id. (citing ECF No. 29 at PageID 136-37.))  Defendants mischaracterize the Court's Order, which is not premised on this concept.  (ECF No. 29.)

BWAY, as the movant, bears the burden of demonstrating that no evidence supports Plaintiff's claim. BWAY, however, cites only to a case interpreting the Kentucky law applicable to *respondeat superior* and a mischaracterization of this Court's prior order.[4]  BWAY cursorily states, without citation to even their own Statement of Material Facts, that "the alleged actions are outside of the scope of Duerksen's employment."  (ECF No. 48 at PageID 317.)  BWAYs filings are therefore insufficient to carry their burden on summary judgment, and their Motion is **DENIED** as to vicarious liability.

    *f. Damages*

BWAY argues that "there is no dispute of material fact that Plaintiff's damages are limited to the time of her discharge on September 2, 2021 through March 23, 2023, the date BWAY discovered Plaintiff lied on her job application during Plaintiff's deposition." (ECF No. 48 at PageID 317.)  Plaintiff disputes the application of the after-acquired evidence defense, but agrees that "Ms. Jones' damages are limited to when she employed earning income more than she was paid at Bway in January 2023."  (ECF No. 54 at PageID 319.)  While BWAY has not met their burden in showing the application of the after-acquired evidence defense at summary judgment,

---

[4] BWAY's response adds a citation to an unpublished case interpreting Tennessee law which is distinguishable on the facts from the case at hand—Boyl v. Merchs. Distribs., Inc., 2006 U.S. Dist. LEXIS 64672 (E.D. Tenn. Sept. 8, 2006) did not involve an individual alleged to have supervisory authority, did not involve the same sort of alleged physical contact at issue here, and arose from two incidents which took place in a break room, not during work activities.

9

their Motion for Summary Judgment on this issue is **MOOT,** given Plaintiff's acknowledgement that any back pay award should be calculated based on a period ending in January 2023.

IV. **CONCLUSION**

Defendant Randy Duerksen's Motion for Summary Judgment is **DENIED.** Defendant BWAY's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**: Summary Judgment is **GRANTED** for BWAY on the Worker's Compensation Retaliation claim, is **MOOT** on their damages claim, and is **DENIED** as to all others.

**IT IS SO ORDERED** this 26th day of February, 2024.

 Jon P. McCalla
JON P. MCCALLA
UNITED STATES DISTRICT JUDGE